## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ADAM CHISM**                                    **PETITIONER**

**V.**                          **CIVIL ACTION NO. 3:20-CV-432-DPJ-LGI**

**WARDEN SCOTT MIDDLEBROOKS**                          **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Adam Chism seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

#### Factual and Procedural Background

Chism was convicted of burglary of a dwelling by a Hinds County jury and sentenced as a violent habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole. The relevant facts are accurately described in the state court's opinion and are incorporated here verbatim.

Officer Angela Nichols of the Jackson Police Department was dispatched to a potential home burglary in progress. The house's alarm system was triggered, resulting in the alarm company calling the police, and the police department dispatched Nichols who was close by.

Nichols arrived at the scene and walked around to the basement in the back of the house where the alarm originated. She saw Chism backing out of the basement carrying a bag. Nichols ordered Chism to drop the bag and get down on the ground. He complied.

Nichols arrested Chism after she inspected the bag and found an X–Box One game console.

Chism testified that he was on his way to his father's house early that Saturday morning to work, like he normally did on Saturdays. As they were driving, Chism and his wife, Mary, got into a dispute. To avoid any further confrontation, Chism testified that he asked Mary to pull over and let him out of the car. He would continue the rest of the way on foot. Chism said that, since he was already on probation from a previous conviction, he wanted to be extra cautious to avoid confrontation.  Mary let him out of the car and sped off hurriedly, which worried Chism. He testified that he began walking to the house of his friend's aunt, which was nearby. He planned to borrow a phone to check on his wife and let his father know that he was on the way.

Chism then testified that he was walking past the house at issue, and he heard an alarm. He walked around the house to investigate and assist anyone that may need help. He then claimed the back door was wide open. Chism also said that he did not intend to go inside and take anything; but he entered the house and called for anyone that may be inside. He then noticed a bag on the floor of the basement. He picked up the bag just as Nichols was rounding the corner.

After placing Chism in custody, Nichols testified that she and other officers entered the house through the basement door to inspect and secure the house. Kenneth Gray, the then-tenant of the house, testified that the basement door separating the basement from outside had been pushed in and the doorframe sustained significant damage. Gray testified that he had not given anyone permission to enter his residence.

2

Gray confirmed Nichols's testimony that his bicycle, which he usually stored inside the basement, was leaning against the wall outside of the basement door.

Once inside the house, Nichols proceeded upstairs into the kitchen and living-room areas. She testified that the door separating the basement from the living room was totally destroyed and completely torn in half. She found the living room in disarray, and the couch was thrown about as though someone had been searching through it. Nichols stated these were all common signs of forced entry and burglary. *Chism v. State*, 253 So. 3d 343, 344–45 (Miss. Ct. App. 2018)

Based on the evidence presented at trial, Chism was convicted of burglary of a dwelling and sentenced as a violent habitual offender to life without parole.

### Discussion

Aggrieved, Chism appealed his conviction alleging trial errors and insufficiency of the evidence. Finding no errors, the Mississippi Court of Appeals affirmed Chism's conviction and sentence. *Chism*, 253 So. 3d 343. Subsequent petitions for rehearing and certiorari were denied. Chism challenged his habitual offender status in state post-conviction proceedings, but the Mississippi Supreme Court found he had no right to post-conviction relief because he failed to make a substantial showing of the denial of a state or federal right. Chism now brings the instant petition and asserts as grounds for relief the following (as stated by Chism):

> Ground One:    Petitioner is convicted and in custody of M.D.O.C. in violation of the United States Constitution[,] laws[,] and treaties by denial of competent effective assistance of counsel and denial of due process and equal

protection of law through imposition of illegal sentence.

Ground Two:    Petitioner is convicted and is in M.D.O.C. in violation of the United States Constitution[,] laws[,] and treaties because trial judge erred in allowing the admission before the jury at the end of trial of the Appellant's prior house burglary conviction into evidence after previously excluding it under Mississippi Rule of Evidence 609, and admission of the Appellant's prior conviction was a per se violation of Mississippi Rule of Evidence 404(b), prior bad acts.

Ground Three:    Petitioner was convicted and is in M.D.O.C. custody in violation of the United States Constitution[,] laws[,] an[d] treaties due to the trial court erred when it denied the Petitioner's Motion to Set Aside the Jury Verdict (J.N.O.V.) for legal insufficiency in the prosecution[']s case or, alternatively, to grant the Petitioner a new trial where the verdict was against the overwhelming weight of the evidence.

Ground Four:    Petitioner is convicted and in custody of the M.D.O.C. in violation of the United States Constitution[,] laws[,] an[d] treaties because the trial judge erred in refusing defense proposed jury instruction D-7, which correctly stated the law in circumstantial evidence cases, and was supported by the evidence presented at trial.

Ground Five:    Petitioner was convicted and is in M.D.O.C. custody in [] violation of the United States Constitution[,] laws[,] and treaties by false imprisonment through denial of ex-post facto protection suppression of exculpatory evidence denial of access to court for redress through denial of competent effective assistance of appellate counsel and racial discrimination.

## Procedurally Defaulted Claims

As a threshold matter, Chism's ineffective assistance of counsel claim in ground one, and the multiple claims raised in ground five, are foreclosed from federal review

4

because they are unexhausted.  Applicants seeking federal habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief. *Parr v. Quarterman*, 472 F.3d 245 (5th Cir. 2006).  To satisfy the exhaustion requirement of § 2254(b)(1), a "habeas petitioner must have fairly presented the substance of his claim to the state courts." *Smith v. Dretke*, 422 F.3d 269, 276 (5th Cir. 2005). This requires submitting the factual and legal basis of every claim to the highest available state court for review.  *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  As the Supreme Court has recently observed, however, "[s]tate prisoners often fail to raise their federal claims in compliance with state procedures," or even fail to raise them in state court at all. *Shinn v. Ramirez*, 212 L. Ed. 2d 713, 142 S. Ct. 1718, 1732 (2022).  "But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. Thus, federal habeas courts must apply an important corollary to the exhaustion requirement: the doctrine of procedural default." *Id.* (internal citations and quotations marks omitted).  The doctrine applies here, as any attempt by Chism to return to the state courts now to raise his unexhausted claims would likely be dismissed as a successive writ.  *See* Miss. Code Ann. § 99-39-27(9). *Nelson v. Davis*, 952 F.3d 651, 662 (5th Cir. 2020); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), holding modified by *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

Chism can save his procedurally defaulted claims, however, if he can establish both cause for the default and actual prejudice resulting from it, or if he can show that a "fundamental miscarriage of justice" will occur if his claims are not considered.

*Coleman*, 501 U.S. at 750. To establish cause, "there must be something external to the petitioner, something that cannot fairly be attributed to him." 501 U.S. at 753. To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Chism makes no attempt to show that either is met here.

Similarly, he does not show that, as a factual matter, he is actually innocent of the crime for which he was convicted or that he would suffer a fundamental miscarriage of justice if the defaulted claims were not considered. The "fundamental miscarriage of justice" exception is triggered only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). It requires that the petitioner support such an allegation with *new,* reliable evidence that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Chism has presented no new evidence here. Accordingly, he has failed to overcome his procedural default and the claims at issue are barred from federal review.

### Claims Reviewed on the Merits in State Court

Chism's remaining claims, as discussed below, were adjudicated on the merits on direct appeal or post-conviction review. AEDPA precludes this Court from granting Chism federal habeas corpus relief unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts.  *Id.*  "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted).  Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).  The state court's decision must be objectively unreasonable, not merely erroneous or incorrect.  *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013).  Deference is critical because

federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

### Ground One (Ex Post Facto Clause Violation)

In ground one, Chism argues, as he did on state post-conviction review, that the "State illegally used a non-violent (2009) unoccupied house burglary conviction" to sentence him as a habitual offender under Miss Code Ann. § 99-19-83.[1] Mississippi's nonviolent habitual-offender statute requires a maximum sentence of 25 years, without the possibility of parole, for persons who have been convicted of two previous felonies. Miss Code Ann. § 99-19-81. By comparison, Mississippi's violent habitual-offender statute requires a life sentence, without the possibility of parole, for persons who have

---

[1] Miss. Code. Ann. § 99-19-83 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, ... and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation[,] or any other form of early release from actual physical custody within the Department of Corrections.

been convicted of two previous felonies, one of which qualifies as "violent."  Miss. Code. Ann. § 99-19-83.

Evidence presented at Chism's trial and sentencing revealed that he had two prior felony convictions by guilty pleas:  a 2012 auto burglary and a 2009 burglary of a dwelling.  At all relevant times, Mississippi has defined burglary of a dwelling as follows: (1) unlawful breaking and entering; (2) of a dwelling; (3) with intent to commit a crime therein. *Ward v. State*, 285 So. 3d 136, 140 (Miss. 2019).  *See* Miss. Code Ann. § 97-17-23(1).  At the time of Chism's 2009 conviction, however, burglary of a dwelling was not statutorily classified as a crime of violence for sentencing enhancement.  *See Brown v. State*, 102 So. 3d 1087, 1092 (Miss. 2012).  The State was required to prove that actual violence occurred during the commission of the burglary. *Id.*  In 2014, however, burglary of a dwelling was added to the list of crimes of violence by the Mississippi Legislature. Miss. Code Ann. § 97-3-2 (Rev. 2014).  Accordingly, when Chism was then convicted in 2016 for the underlying offense—his third felony—he was sentenced as a violent habitual offender to a life sentence without the possibility of parole because his 2009 burglary conviction now qualified as a per se crime of violence under the 2014 amendment.[2]  Chism contends that this was a violation of the Ex Post Facto

---

[2] *See also Russell v. State*, 346 So. 3d 461, 466 (Miss. Ct. App.), *reh'g denied* (Aug. 10, 2021), *cert. granted,* 326 So. 3d 467 (Miss. 2021), and *aff'd,* 346 So. 3d 435 (Miss. 2022), and *aff'd,* 341 So. 3d 84 (Miss. 2022), *withdrawn from bound volume* ("[Although burglary of a dwelling was not considered a per se crime of violence at the time of Russell's 2004 felony convictions, burglary of a dwelling was considered a per se crime of violence in accordance with section 97-3-2 at the time of Russell's 2019 conviction for possession of a controlled substance and subsequent sentencing as a habitual offender.").

Clause of the Constitution because the 2014 change in law was not "suppose[d] to [a]ffect petitioner in any way."[3]

A law violates the Ex Post Facto Clause, Article I, Section 9, Clause 3 of the Constitution, "if it is 'retrospective,' that is, it 'appl[ies] to events occurring before its enactment,' and it 'disadvantage[s] the offender affected by it.'" *Price v. Warden*, 785 F.3d 1039, 1042 (5th Cir. 2015) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)). That said, the Ex Post Facto Clause "does not extend to every change in the law that may work to the disadvantage" of a party, *Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S. Ct. 714, 62 L. Ed. 2d 723 (1980), or that may "deprive him of a substantial right involved in his liberty." *Collins v. Youngblood*, 497 U.S. 37, 47–52, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). In rejecting the ex post facto claim here, the Mississippi Supreme Court reasoned as follows:

> Chism claims the application of Section 97-3-2 (Rev. 2014) to his 2009 burglary-of-a dwelling conviction is *ex post facto*, and thus illegal, because Section 97-3-2 was not enacted until 2014. But this Court has long made clear that a sentence as a "habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one." *Smith v. State*, 465 So. 2d 999, 1003 (Miss. 1985) (emphasis added) (quoting *Branning v. State*, 224 So. 2d 579, 580–81 (Miss. 1969)). Chism's life sentence—the one for

---

[3] Though not specifically asserted, if Petitioner contends the reclassification was a ex facto violation because it interfered with his eligibility for parole, the claim fails to state a claim upon which relief may be granted under 28 U.S.C. § 2254(a). Prisoners in Mississippi "have no liberty interest in parole." *Wansley v. Mississippi Dep't of Corr.*, 769 F.3d 309, 312 (5th Cir. 2014). *See also Dedeaux v. Turner*, No. 20-61036, 2021 WL 8322125, at *1 (5th Cir. Sept. 16, 2021), *cert. dismissed sub nom. Dedeaux v. McClure*, 213 L. Ed. 2d 1009, 142 S. Ct. 2770 (2022). And it is not readily apparent that Chism would have been eligible for parole had he been sentenced to as a non-habitual offender. *See* Miss Code Ann. § 99-19-81

which he seeks leave to file a PCR motion—is not retroactive additional punishment for his 2009 conviction. It is an enhanced penalty for his 2016 conviction.

*Chism*, 253 So. 3d 343, No. 2018-M-01436 (Miss.  July 25, 2019).

As the Fifth Circuit has recently reiterated, "this is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was *incorrect*, but whether it was unreasonable—whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) (emphasis in original) (citing *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  For purposes of federal review, the core inquiry is whether the state court's decision was "contrary to, or involved an unreasonable application of, *clearly established Federal law.*" 28 U.S.C. § 2254(d) (emphasis added).

More than 200 years ago, the United States Supreme Court noted there were four categories of laws that contravene ex post facto principles. Any law that: (1) makes an act done before the passing of the law, which was innocent when done, criminal; (2) aggravates a crime and makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. *Carmell v. Texas*, 529 U.S. 513, 520, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000) (citing *Calder v. Bull*, 3 U.S. 386, 1 L. Ed. 648 (1798)).  More than 100 years

later, the Court endorsed an alternative definition omitting the fourth category and

defining an ex post facto law as follows:

> [A]ny statute which punishes as a crime an act previously committed,
> which was innocent when done; which makes more burdensome the
> punishment for a crime, after its commission, or which deprives one
> charged with crime of any defense available according to law at the time
> when the act was committed.

*Collins*, 497 U.S. at 42 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S. Ct. 68, 70

L. Ed. 216 (1925).  The Court reasoned that not all laws that "alter the situation of a party

to his disadvantage" or "deprive him of a substantial right involved in his liberty" give

rise to an ex post facto violation. *Id.*[4]  Though it has since utilized both definitions when

confronting ex post facto challenges, it has noted that "[o]ur cases have not attempted to

precisely delimit the scope of the Latin phrase. . . ," but have instead given it substance

by an accretion of case law." *Peugh v. United States*, 569 U.S. 530, 539, 133 S. Ct. 2072,

2081, 186 L. Ed. 2d 84 (2013) (quoting *Dobbert v. Fla.*, 432 U.S. 282, 292, 97 S. Ct.

2290, 53 L. Ed. 2d 344 (1977)).

   Relevant to the ex post facto challenge raised here, in the decades that followed,

the Court has also held that a habitual offender sentence "is not to be viewed as either a

new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the

latest crime, which is considered to be an aggravated offense because [it is] a repetitive

one." *Gryger v. Burke*, 334 U.S. 728, 732, 68 S. Ct. 1256, 1258, 92 L. Ed. 1683 (1948).

---

[4] *See Hopt v. People*, 110 U.S. 574, 590, 4 S. Ct. 202, 28 L. Ed. 262 (1884) (rejecting ex post facto challenge of retroactive application of statute that declared felons competent to testify as witnesses); *Thompson v. State of Missouri*, 171 U.S. 380, 386–87, 18 S. Ct. 922, 43 L. Ed. 204 (1898) (rejecting ex post facto challenge of retroactive application of statute allowing admission of handwritten documents for use as handwriting exemplars)).

It has reiterated time and again that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes, which are commonplace in state criminal laws, do not change the penalty imposed for the *earlier* conviction." *Nichols v. United States*, 511 U.S. 738, 746, 114 S. Ct. 1921, 1927, 128 L. Ed. 2d 745 (1994) (emphasis added).  Repeat-offender laws "penaliz[e] only the last offense committed by the defendant." *Id.* (citing *Moore v. State of Missouri*, 159 U.S. 673, 677, 16 S. Ct. 179, 181, 40 L. Ed. 301 (1895); *Oyler v. Boles*, 368 U.S. 448, 451, 82 S. Ct. 501, 503, 7 L. Ed. 2d 446 (1962).   If the enhancement statute is in effect when a petitioner commits the currently charged offense, the petitioner has fair notice of the possible sentence enhancement.  *Weaver*, 450 U.S. at 30.

The Fifth Circuit has reached the same result in the face of similar ex post facto challenges.  In *Perkins v. Cabana,* the court upheld as a general matter the application of Mississippi's habitual offender statutes to defendants whose prior offenses occurred before the statutes became effective.   The court reasoned that:

> This retroactivity argument misses the mark. The statute defines and fixes the punishment for future felony offenses. That it does so in terms of past offenses does not punish or increase the punishment for those past offenses. The State has done no more than classify felony recidivists in a different category for punishment purposes than the category provided for first felony offenders. No person is exposed to the increased penalty unless he commits a felony after the enactment.

*Perkins v. Cabana*, 794 F.2d 168 (5th Cir. 1986)).  Relying on Supreme Court precedent and consistent with other courts across the country, the Fifth Circuit, and lower courts within it, have specifically upheld the use of sentencing enhancements based on crimes not previously defined as crimes of violence at the time of their commission.  *See United*

*States v. Saenz-Forero*, 27 F.3d 1016 (5th Cir. 1994) (holding that use of a 1985 drug conviction to enhance defendant's sentence did not violate the Ex Post Facto Clause even though the drug conviction was not classified as an "aggravated felony" for enhancement purposes until 1988); [5] *Pratt v. Keith*, No. 13-CV-2289, 2016 WL 4531120, at *2 (W.D. La. July 13, 2016), *report and recommendation adopted,* No. 13-CV-2289, 2016 WL 4532274 (W.D. La. Aug. 29, 2016) (use of purse-snatching convictions not previously defined as a crime of violence was not an ex post facto violation);*Green v. Goodwin*, No. 13-CV-2312, 2016 WL 4468115, at *3 (W.D. La. July 13, 2016), *report and recommendation adopted,* No. 13-CV-2312, 2016 WL 4491443 (W.D. La. Aug. 23, 2016) (state court's rejection of ex post facto challenge was not contrary to, or an unreasonable application of clearly established federal law where prior aggravated-flight conviction was not defined as a crime of violence at the time petitioner was convicted of that crime); *Ward v. Louisiana Dep't of Pub. Safety & Corr., Time Computation Legal Dep't*, 547 F. App'x 520 (5th Cir. 2013) (unpublished) (affirming dismissal of 42 U.S.C. §1983 ex post facto challenge that 1992 aggravated assault conviction that was not a crime of violence at the time petitioner was convicted of the crime should not be used to deny good time under statute enacted in 1994); *Payton v. Warden Elayn Hunt Corr. Ctr.*, No. CIV.A. 08-946, 2009 WL 1255525 (W.D. La. May 6, 2009) (no ex post facto

---

[5] *United States v. Leonard,* 868 F.2d at 1399–1400 (statute which provided for enhancement of sentence of persons previously convicted of violent felonies was not ex post facto law, though defendant's prior convictions were before enactment of statue) *overruled on other grounds by Taylor v. United States,* 495 U.S. 575, 579 & n. 2, 110 S.Ct. 2143, 2148–49 & n. 2, 109 L.Ed.2d 607 (1990), *and cert. denied,* 496 U.S. 904, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990).

violation where robbery offense was committed before enactment of statue defining it as a crime of violence); *Moten v. Thompson*, No. CIV.A. 07-1010, 2007 WL 2847539, at *5 (W.D. La. Aug. 16, 2007) (same); *Cannady v. Dretke*, 173 F. App'x 321 (5th Cir. 2006) (finding district court's enhancement reasoning apt where enhanced penalties for crimes committed after the effective date of the statute based on prior convictions was not an ex post facto violation); *McCall v. Dretke*, 390 F.3d 358, 365 (5th Cir. 2004) (statute did not violate the Ex Post Facto Clause when applied to an inmate convicted of DWI which had been enhanced to a felony based on a DWI conviction that preceded the statute's effective date).

As noted, "the only question that matters is whether the state court's denial of [Chism's ex post facto claim] flouted or unreasonably applied clearly established federal law" as determined by the Supreme Court. *Sanchez*, 936 F.3d 300 at 304 (internal quotation marks and citation omitted). The undersigned does not come to this conclusion lightly, but given the aforementioned authorities, the undersigned submits that Chism fails to make this showing. *See Pratt*, 2016 WL 4531120, at *3 (observing that there is no Supreme Court authority establishing that reclassifying crimes as crimes of violence constitutes an ex post facto violation); *Green*, 2016 WL 4468115, at *3 (same). Though not statutorily classified as a crime of violence in 2009, the change in law did not occur before Chism was sentenced in 2009, nor did it retroactively increase his sentence for that offense once passed. *Peugh*, 569 U.S. at 545 ("Such a retrospective increase in the measure of punishment raises clear ex post facto concerns."). Moreover, it did not criminalize conduct that was previously lawful, nor did it deprive Chism of an available

defense.  To the contrary, at all relevant times, burglary of a dwelling has been a crime under Mississippi law to which consent has been an affirmative defense.  *Body v. State*, 318 So. 3d 1104, 1109 (Miss. 2021).  To the extent that Chism argues he was deprived of the opportunity to disprove violence occurred during the commission of the 2009 offense, in the absence of clearly established federal law to the contrary, it was not unreasonable for the state court to conclude that the recategorization of the prior offense, of which Chism had fair warning, did not run afoul ex post facto principles, but operated only to enhance his sentence as a recidivist for his current conviction.  Had Chism not committed his third felony, he would not, as he puts it, been affected by the 2014 amendment in any way.

### Ground Two

In ground two, Chism asserts that he is entitled to habeas relief because the trial court erroneously admitted evidence of his prior burglary convictions.  Over the objection of the defense, the trial court admitted evidence of Chism's prior burglary convictions as evidence of intent under Miss. Rule Evid. 404(b).  Because Chism repeatedly maintained throughout trial that he did not intend to burglarize the home, the trial court reasoned that "given [Chism's] vigorous assertion of lack of intent [to steal,] . . . the admission of the [past] burglary conviction[s] . . . is extremely relevant and appropriate, in the State's effort to rebut the defendant's assertion that he did not intend to burglarize the home."  The Mississippi Court of Appeals agreed, noting that "[i]ntent in burglary cases is a central element to the charge" and its probative value outweighed any prejudicial harm.

*Chism*, 253 So. 3d at 347.  Accordingly, Chism's assignment of error was found to be entirely without merit.

For purposes of federal review, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999).  To merit relief, Chism must show that the admission of his prior burglary convictions "had a substantial and injurious effect" on the jury's verdict. "This is a high hurdle, even without AEDPA's added level of deference," and it is one Chism fails to meet.  *Gonzales v. Thaler*, 643 F.3d 425, 430–31 (5th Cir. 2011).  Contrary to what he argues, the jury heard evidence independent of his prior convictions indicating forced entry and burglary.  The significant damage to the basement and living room doorframes, the triggered house alarm, and the fact that Chism was seen leaving the basement carrying a bag with an X-Box One game console, all support a finding that he was guilty of house burglary.  The state court's rejection of this claim was not contrary to or an unreasonable application of federal law.  No relief is warranted on this claim.

### Ground Three (Weight and Sufficiency of the Evidence)

In ground three, Chism challenges the weight and sufficiency of the evidence supporting his conviction.  According to Chism, the State's evidence was "flimsy" and circumstantial because it hinged on the testimony of Officer Nichols, who admitted she did not see Chism as he was breaking into the home.  There was no evidence, Chism argues, of his intent to burglarize the home and the jury's verdict to the contrary entitles him to relief.  These arguments are unavailing.

The law is clear.  Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires assessing the credibility of the evidence presented at trial.  *Tibbs v. Fla.*, 457 U.S. 31, 37–38, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).  "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (citation omitted).  It is purely a matter of state law and is not cognizable on habeas review.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . .").  Because Chism's challenge to the weight of the evidence is not a valid claim for habeas corpus review, his request for relief on this basis should be denied.

A sufficiency-of-the-evidence claim, however, is based on federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt.  The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotation marks omitted).  *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651.  In the first layer, a state appeals court reviewing the

sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the State, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Chism committed the crime alleged beyond a reasonable doubt. As the court explained:

> When considering the evidence in the light most favorable to the prosecution, we find there was sufficient evidence to convict Chism of burglary of a dwelling. The alarm system on the house had been triggered by a break-in, and the alarm company and police were notified. Because Nichols was so close by at the time she received the call from dispatch, she was able to arrive on the scene quickly and see Chism exiting the house through the broken basement door with stolen goods in his possession. The bag contained property later identified as belonging to the resident of the home, Gray. The basement door that Chism admittedly entered and exited without Gray's permission was severely damaged, and the inside of the home showed signs consistent with forced entry and burglary. Gray's bicycle, which was normally stored inside the basement, had been moved and set up against the outside of the house near the basement door.

> Considering these facts, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We find no merit to this issue.

*Chism*, 253 So. 3d at 347–48.

Under our limited AEDPA review, the state court's rejection of Chism's

sufficiency-of-the-evidence claim was neither contrary to, nor an unreasonable

application of, *Jackson.* On the contrary, the jury's construction of the evidence was

reasonable, and its resulting decision to find Chism guilty of burglary beyond a

reasonable doubt under Mississippi law was rational. The jury was presented with

sufficient evidence from which it could reasonably infer that Chism unlawfully entered

the home with the intent to commit a crime therein. No habeas relief is warranted on this

claim.

### Ground Four (Circumstantial Evidence Instruction)

In ground four, Chism asserts that habeas relief is warranted because the trial court

erred in failing to grant a circumstantial evidence instruction. Under Mississippi law, a

circumstantial evidence instruction would be required "only when the prosecution can

produce neither an eyewitness nor a confession/statement by the defendant." *Grayer v.

State*, 120 So. 3d 964, 968 (Miss. 2013). As Chism sees it, the evidence against him was

"wholly circumstantial" because no one saw him break into the home, nor was there

evidence of his intent to steal the X-box he was holding in his hands as he was seen

exiting the house. The Mississippi Court of Appeals rejected this claim on direct appeal,

finding it to be entirely without merit. Contrary to what Chism asserted, the court noted

there was direct evidence in the form of Officer's Nichols's testimony that put "Chism

inside and exiting the broken-into house while intentionally in the possession of stolen

property." *Chism*, 253 So. 3d at 349. Accordingly, the court found Chism was not

entitled to a circumstantial evidence instruction.

Whether the trial court erred in declining to grant a circumstantial evidence instruction is not for this court to resolve. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Even if the evidence were "wholly circumstantial," Chism possesses no federal constitutional right to a circumstantial evidence instruction. *See Pea v. Cain*, No. CV 14-0083-JJB-EWD, 2017 WL 1197872, at *11 (M.D. La. Feb. 28, 2017), *report and recommendation approved,* No. CV 14-83-JJB-EWD, *Pea v. Cain*, No. CV 14-83-JJB-EWD, 2017 WL 1199740 (M.D. La. Mar. 30, 2017); *Griffin v. New York State Dep't of Corr.*, No. 06 CIV. 14217(GEL), 2007 WL 1296203, at *2 (S.D.N.Y. May 2, 2007) ("as a matter of federal constitutional law, circumstantial evidence is no different than direct evidence; so long as the jury is satisfied of guilt beyond a reasonable doubt, the type of evidence that convinces jurors is immaterial."); *Martinez v. Reynolds*, 888 F. Supp. 459, 262 (E.D.N.Y. 1995) ("[t]here is no federal constitutional right to a circumstantial evidence instruction."). The United States Supreme Court has long observed that in circumstances such as this, "the better rule is that where the jury is properly instructed on the standards of reasonable doubt,[6] such an additional instruction on circumstantial

---

[6]    The record reflects the jury was given the following instruction on the presumption of innocence and reasonable doubt:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless

evidence is confusing and incorrect." *Holland v. United States*, 348 U.S. 121, 239–40, 75 S. Ct. 127, 99 L. Ed. 150 (1954). Indeed, challenged jury instructions ought "not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). "[A] judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Id.* Such was the case here, and Chism has not shown the omission of a circumstantial evidence instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Given Officer Nichols's testimony, Chism has presented nothing in his habeas petition to overcome the deference afforded to the state court's rejection this claim.

For all the reasons discussed herein, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must

---

overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 31, 2023.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE